LEDET, J.,
dissents with reasons.
_JjThe majority correctly points out that the identical due process and separation of powers arguments that Mr. Bell raises on appeal have been rejected by this court. The sole issue in this case is thus whether Mr. Bell met his burden of establishing a violation of his constitutional right to a fair and speedy trial. In resolving this issue, I, like the majority, employ the four-factor balancing analysis set forth in Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182, 38 L.Ed.2d 101 (1972), for ad *766 dressing a speedy trial violation.[1] However, based on my analysis of the Barker factors, which is set forth below, I find no speedy trial violation. I would thus reverse the trial court’s ruling granting Mr. Bell’s motion to suppress.
The first Barker factor — length of the delay
On this factor, I agree with the majority’s finding that the thirty month delay in this case is presumptively prejudicial, triggering the necessity for analyzing the other three Barker factors.
The second Barker factor — reason for the delay
The second factor focuses on which party is responsible for the delay. Mr. Bell contends that responsibility for all the delay should be attributed to the State 12due to its attempts at controlling the district court’s docket by invoking La.C.Cr.P. art. 61. The State counters that it was not solely responsible for the delay. In support, the State cites the October 6, 2010, joint continuance that was agreed to by both parties. The State also cites Mr. Bell’s failure to object to any of its requests for continuances except for the State’s final request. The State further contends that it articulated a valid reason for seeking to continue the trial — that it was missing a NOPD supplemental report.
The United States Supreme Court has acknowledged the reality that “pretrial delay is often both inevitable and wholly justifiable. The government may need time to collect witnesses against the accused [or] oppose his pretrial motions.” Doggett v. United States, 505 U.S. 647, 656, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992). Such inevitable and justifiable delay occurred in this second degree murder case. The State’s cited reason for seeking a continuance was its need to obtain additional evidence — a NOPD supplemental report.
The defense filed several pretrial motions that the State was required to oppose. The district court granted one of the defense’s motions, suppressing an identification; and the State filed a writ application with this court seeking review of that interlocutory ruling. Finding merit to the State’s writ, this court reversed the district court’s ruling on that motion. State v. Bell, 10-0446 (La.App. 4 Cir. B/2B/10)(unpub.).
The delay that results from the State taking a writ application from a district court’s interlocutory ruling on a pretrial defense motion is a proper consideration in deciding a speedy trial violation. State v. Cyrex, 97-2520 (La.App. 1 Cir. 9/25/98), 746 So.2d 1. Explaining the reason for considering this delay, Justice (then Judge) Weimer noted:
Under Barker, delays in bringing the case to trial caused by the state’s applications for supervisory review of interlocutory rulings may be weighed in determining whether or not a defendant has suffered a | ¡¡violation of his right to a speedy trial.... There is no showing of bad faith or dilatory purpose on the part of the state as to the writ applications. The state’s position in each of the three referenced writ applications was correct, and our decisions granting reversals in the applications are prima facie evidence *767 of the reasonableness of the state’s action .... It is unfair for the defense to complain that the right to a speedy trial was violated when substantial time was consumed having erroneous trial court rulings reviewed.
Cyrex, 746 So.2d at 5-6 (footnote omitted)(citing Loud Hawk, supra); See also State v. Wilkins, 11-1395, pp. 7-8 (La.App. 3 Cir. 6/20/12), 94 So.3d 983, 987-88 (citing Cyrex, supra).
Although the State was responsible for the majority of the delay in this case, some of the delay was attributable to the defense and the district court. As discussed above, some of the delay was attributable to the defense’s pretrial motions. Moreover, the defense’s failure to object to the State’s requests for continuances contributed to the delay. As a commentator points out, “[wjith respect to reasons for the delay, obviously if the defense provokes or acquiesces in the delays, he is less likely to prevail on a denial of speedy trial claim.” Gail Dalton Schlosser, La. Prac. Crim. Trial Prac. § 14:24 (4th ed. 2011)(emphasis in original).
Contrary to Mr. Bell’s suggestion, the record does not support attributing responsibility for all the delay to the State. One continuance was on the court’s own motion because the court was closed (can-celled). Another continuance was on the parties’ joint motion. The delay in this case thus must be apportioned between the State, the defense, and the district court.
The third Barker factor — assertion of the right to speedy trial
I disagree with the majority’s finding that this factor was satisfied. The majority’s reliance on State v. Leban, 611 So.2d 165 (La.App. 4th Cir.1992), in support of this finding is misplaced. In Leban, as in this case, the defendant’s first actual complaint in the record of the denial of his right to a speedy trial was the Rfiling of the motion to quash; there was no indication that the defendant objected to any of the continuances. Indeed, the dissenting judge in Leban noted that “[t]he defendant never filed a motion for a speedy trial, a crucial factor under Barker which emphasizes that the failure to assert the right to a speedy trial makes it difficult to prove that one was denied.” 611 So.2d at 170 (Barry, J., dissenting). Indeed, the majority in Leban focused on the other Barker factors to find a speedy trial violation, not this factor.
In this case the first complaint in the record of a speedy trial violation was Mr. Bell’s motion to quash. The record thus establishes that Mr. Bell was not very aggressive in asserting his right to a speedy trial. I would thus find that this factor weighs against a finding of a speedy trial violation.
The fourth Barker factor — prejudice
The fourth factor involves an inquiry into the degree of prejudice suffered by the defendant due to delay in prosecution. Addressing this factor, the United States Supreme Court in Barker noted:
Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.
Barker, 407 U.S. at 532, 92 S.Ct. 2182. Hence, the most important consideration in addressing the prejudice factor is deter *768 mining whether the defendant’s defense was impaired by the delay. Id.
Although the burden of establishing prejudice is generally on the defendant, the United States Supreme Court in Dag-gett, supra, modified its analysis of the prejudice factor and “held that no showing of prejudice is required when the delay is great and attributable to the government.” United States v. Shell, 974 F.2d 1035, 1036 (9th Cir.1992). Mr. Bell contends that a consideration of the first three Barker factors supports a presumption of prejudice because of the extreme length of the delay and the State’s negligence in causing it. In support of this position, Mr. Bell cites United States v. Bergfeld, 280 F.3d 486, 490 (5th Cir.2002), for the proposition that “[t]he first three factors should be used to determine whether the defendant bears the burden to put forth specific evidence of prejudice (or whether it is presumed).” Id. Agreeing with Mr. Bell, the majority finds it unnecessary for Mr. Bell to establish actual prejudice. I disagree.
An analysis of the first three Barker factors does not support a presumption of prejudice in this case. See State v. Shannon, 09-0305, p. 9 (La.App. 4 Cir. 9/9/09), 17 So.3d 1061, 1067 (refusing to presume prejudice simply because of the three-year and four-month delay)(citing U.S. v. Serna-Villarreal, 352 F.3d 225, 232 (5th Cir.2003)(noting that review of the jurisprudence reveals that the courts “generally have found presumed prejudice only in cases in which the post-indictment delay lasted at least five years.”)) The weight to be ascribed to the length of the delay and the reason for it is determined by the particular circumstances of the particular case; “the delay tolerable for a simple street crime is considerably less than that for a serious complex, conspiracy charge.” State v. Reaves, 376 So.2d 136, 138 (La.1979) (citation omitted).
In this case, the delay was thirty months (two years six months), all of the delay cannot be attributable to the State, and the alleged offense is a serious one — second degree murder. Given the particular circumstances of this case, prejudice cannot be presumed. Mr. Bell thus was required to establish actual prejudice.
Mr. Bell’s argument regarding actual prejudice is based on two factors: (1) his extensive pre-trial incarceration, and (2) his loss of choice or continuity of counsel. He contends that the inordinate delay of almost three years caused him to lose his choice of counsel when his family ran out of money to pay for his | (¡privately retained counsel. According to Mr. Bell, his right to “continuity of counsel” was compromised as a result of the delay. He further contends that his loss of continuity of counsel, when combined with the oppressive pre-trial incarceration constituted quantifiable harm and therefore was sufficient to establish specific prejudice. Neither of the factors Mr. Bell cites supports a finding of specific prejudice.
A similar argument regarding the loss of “continuity of counsel” constituting specific prejudice for purposes of the fourth Barker factor was rejected by this court in Brown, supra. The defendant argued that the delays caused by the State had resulted in her having been passed between four different OPD attorneys. Rejecting her argument that the lack of “continuity of counsel” constituted specific prejudice, we noted the lack of any jurisprudence supporting the notion that the right to a speedy trial includes within it the right to “continuity of counsel.” Brown, 11-0947 at p. 12, 88 So.3d at 670.
Mr. Bell also suggests that his incarceration for almost three years was prejudicial to his defense. Although incarceration *769 is inherently prejudicial, the type of prejudice that is most pertinent in a Barker analysis is prejudice to a defendant’s defense. As a commentator has explained:
A generalized complaint that the delay prevented the marshalling of a defense is insufficient. Nor is the anxiety and psychological pressure inherent in any prosecution or the hardship caused by incarceration per se enough to constitute prejudice. The court really envisions an actual hindrance to the defense caused by the delay such as a witness dying or otherwise becoming unavailable. Delay alone, even when unjustified by the state, cannot apparently constitute a denial of the defendant’s right to a speedy trial unless he can show actual prejudice.
Gail Dalton Schlosser, La. Prac.Crim. Trial Prac. § 14:24 (4th ed. 2011). In this case Mr. Bell has failed to show specific prejudice to his defense as a result of the delay.
17Considering the circumstances of this case and balancing the Barker factors, I cannot conclude that there was a violation of Mr. Bell’s constitutional right to a speedy trial. The delay was thirty months. The charge against Mr. Bell was a serious one — second degree murder. The State’s request to continue the January 18, 2011 trial date was for a facially valid reason — the lack of a NOPD supplemental report. Mr. Bell failed to assert his right to a speedy trial until he filed the motion to quash. Mr. Bell’s claim regarding prejudice to his defense was based on a loss of continuity of counsel, which was not a recognized source of prejudice for purposes of a speedy trial violation. Otherwise, his claim of prejudice was a generalized one. Likewise, the general collateral effects he suffered as a result of his incarceration for the pending charge alone were insufficient to constitute prejudice. Given that Mr. Bell has established neither a speedy trial violation nor specific prejudice to his right to a fair trial, I would find that the district court abused its discretion in granting the motion to quash the indictment and reverse.
For these reasons, I respectfully dissent.

. The four factors enunciated in Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), for addressing a speedy trial violation are as follows: (i) whether the delay between accusation and trial is uncommonly long; (ii) whether the prosecution or the defendant is more to blame for the delay; (iii) whether, in due course, the defendant asserted his right to a speedy trial; and (iv) whether he suffered prejudice as a result of the delay.